**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

MARK BROACH,                                             Case No. 1:12-cv-66

                    Plaintiff,                           Bowman, M.J.

          v.

CITY OF CINCINNATI,

                    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff Mark Broach filed this action against his current employer, the City of Cincinnati, alleging that Defendant has discriminated against him on the basis of his race, and has engaged in retaliation against him based upon his protected activities. (Doc. 16, Amended Complaint). Pursuant to the consent of the parties and 28 U.S.C. §636(c), this case has been assigned to the undersigned magistrate judge for all proceedings, including trial.

Currently pending before the Court is Defendant's motion for summary judgment, to which Plaintiff has filed a response,[1] and Defendant, a reply. Defendant also filed Proposed Undisputed Facts, to which Plaintiff recently responded. For the reasons that follow, Defendant's motion for summary judgment will be granted in part and denied in part.

---

[1]Finding the issues to be adequately briefed, the Court will deny Plaintiff's request for additional oral argument.

### I.  Background

Plaintiff, who is African-American, has been employed as a Firefighter with the City of Cincinnati since 1988.  He was promoted to the position of Lieutenant in 1994. After working at other stations, Plaintiff voluntarily transferred to Engine Company 34 ("Engine 34") in October, 2006.  Captain Kevin Campbell, who is Caucasian, was Plaintiff's supervisor when Plaintiff began working at Engine 34.  There is no dispute that over time, Captain Campbell and Plaintiff had numerous conflicts during their mutual tenure at Engine 34.  Campbell left Engine 34 for some period of time, but returned in early 2010.  The effective date of his reassignment back to Engine 34 is disputed, but there is some evidence that firefighters were "aware" of Campbell's reassignment on or about January 18, 2010.

As Lieutenant, Plaintiff supervised both Caucasian and African American Firefighters at Engine 34.[2]  One such employee was Firefighter Ron Evans, also African American.  Captain Campbell repeatedly asked Plaintiff to discipline Evans, but Plaintiff refused.  Plaintiff believed that Campbell's actions towards Evans were racially motivated, and that Caucasian employees would not be subject to similar discipline. Plaintiff made clear that he would not comply with Campbell's urging to discipline Evans,[3] but there is no evidence that he explained the basis for his refusal.  Plaintiff alleges that after Captain Campbell became aware that Plaintiff would not discipline

---

[2]Plaintiff testified that the majority of firefighters at Engine 34 were African-American. (Doc. 35 at 12, Broach depo. at 44).
[3]Plaintiff admitted in deposition that he was never "ordered" to discipline Evans, but argues that he was urged, threatened, and harassed to do so.

Evans, Plaintiff himself was retaliated against and subjected to a hostile work environment.

On February 10, 2010, Plaintiff reported to a structure fire on Ludlow Avenue; Engine Company 12 responded to the same fire.  Captain Potter, of Engine Company 12, accused Plaintiff of rule violations based on Plaintiff's conduct at that fire (hereinafter the "Potter charges").  Plaintiff testified that Captain Potter subsequently admitted to Plaintiff that Captain Campbell had advised him that Plaintiff was not doing his job regarding Evans. However, Captain Campbell was not aware of the Potter charges against Plaintiff at the time they were filed.  (Doc. 27 at 21, Campbell depo., pages 76-77).  On March 5, 2010 as a result of the Potter charges, Plaintiff was relieved of his supervisory duties, with no loss in pay, pending the result of the investigation. Shortly thereafter, Plaintiff went on stress leave, attending counseling as recommended by the City through the public employee assistance program ("PEAP").  Plaintiff remained off work on stress leave, a portion of which was unpaid, until September 22, 2010.

On March 18, 2010, Plaintiff filed an Equal Employment Opportunity complaint with the City's Human Resources Equal Employment Opportunity ("EEO") office, alleging racial discrimination by Captains Campbell and Potter, Chis Corbett, Rob McWilliams, and the entire Cincinnati Fire Department relating to the Potter charges. Plaintiff's March complaint alleged "a classic case of Institutionalized Racism. Kevin Campbell has spread negative information to surrounding Fire companies, causing Greg Potter to initiate racist charges."  (Broach depo, Exhibit 8).  Cincinnati Senior Human Resources Analyst Lisa Berning testified that she sent Plaintiff a memo in late

June 2010 asking him to contact her or another analyst to discuss his race discrimination charge, but Plaintiff denies receipt and disputes that the memo was sent.

On June 16, 2010, the Internal Investigations Section completed their investigation of the Potter charges and deemed the evidence "inconclusive." Defendant sent an email to Plaintiff advising him of the closure of the case, but Plaintiff did not receive that email because his inbox was "full." Plaintiff asserts that the Defendant deliberately failed to take additional steps to notify him. Plaintiff testified that he called in to inquire about the charges before June, but no information was then available. (Doc. 35, Broach depo. at 126, 190-192). Plaintiff heard rumors that the charges would be dropped in July and/or August, but received no direct communication from the City. Defendant represents that it was unable to otherwise reach Plaintiff since he no longer lived at his last address on file. Several witnesses testified to the general practice of the department not to make direct contact with a firefighter out on stress leave.[4]

On or about September 24, 2010 when Plaintiff returned to work, the City formally advised Plaintiff that the Potter charges had been determined to be "unfounded." (Doc. 32-1 at 6-7). Earlier that month, the City was advised through a letter from Evans' attorney that Plaintiff would be a witness in Evans' separate race discrimination case against the City. (Doc. 32-1 at 13-14). Plaintiff alleges that the delay from June to September in notifying him that he had been cleared of the Potter charges was deliberate and retaliatory, and resulted in lost pay.

---

[4]Plaintiff's EEOC complaint, which is dated December 29, 2010 and discussed in more detail below, admits that Plaintiff "received information in July 2010 that the allegation for the demotion was not found."

After his return to work, Plaintiff was interviewed by Ms. Berning concerning his March complaint on three separate dates: September 28, October 6, and October 13, 2010.  Plaintiff surreptitiously recorded the meetings; transcripts were made of the two October meetings, but Plaintiff failed to preserve the recording of the first September meeting.  Plaintiff testified that Berning told him at the first meeting that there was no discrimination, and that Berning was hostile and intimidating.  Berning testified that she initially determined that there was no discrimination and nothing to investigate, but followed up with additional meetings to facilitate a better working relationship between Plaintiff and Campbell.  (Doc. 26, Berning depo at 30, 53, 94).  Plaintiff disputes that characterization, and testified that Berning did not listen to his complaints, including but not limited to discrimination against Evans.  Part of the conversation at the meetings concerned prior discipline against Plaintiff, but the Potter charges also were discussed.

On or about October 19, 2010, Berning and Acting Chief Robert Kuhn, who is Caucasian, referred Plaintiff for additional counseling through PEAP.  As a result of Plaintiff's responses during their meetings, which Berning described as "erratic, divisive, untruthful and paranoid," Berning and/or Kuhn additionally referred Plaintiff for a fitness for duty evaluation.[5]  (Berning depo at 73-77).  Berning testified to the reasons for the referral, which are also outlined in a letter by Kuhn, copied to Berning.  Plaintiff disputes all of the cited reasons as pretextual.

For example, Berning questioned Plaintiff's denial that he made an anonymous report that another officer was intoxicated, despite the fact that multiple employees

_____

[5]Plaintiff does not dispute that Berning made the referral, but alleges that Acting Chief Kuhn ultimately required the evaluation.  Plaintiff maintains that Berning gathered input from Lt. Lemons, Acting Chief Kuhn, and Captain Campbell.

recognized Plaintiff's voice on the recorded call and/or reported that Plaintiff admitted he was the caller.  Plaintiff admitted that he denied the call, (Doc. 35 at 57-58, Broach depo. at 225-226), but also maintains that he had a right to remain anonymous.

Berning also believed that Plaintiff was untruthful concerning damage to a vehicle, for which Plaintiff was reprimanded in 2009.  Plaintiff asserts that the fact that he continued to dispute the basis for the reprimand should not have resulted in a fitness for duty referral.  Similarly, Plaintiff protests that his reaction to the Potter charges should not have led to a referral.  Another example listed in the referral letter was the existence of overdue performance reviews in Plaintiff's locker, but Plaintiff notes that he was absent from work on stress leave when the reviews became due.  Last, Berning believed that Plaintiff was untruthful in reporting that Captain Campbell threatened to "destroy his career."  Berning suggested that Plaintiff himself had made a similar statement to a subordinate.  Plaintiff argues that the fact that he did not have a witness to corroborate Captain Campbell's alleged threat should not have led to a referral for a fitness for duty exam.

Plaintiff alleges that the City treated him differently than other employees required to submit for such evaluations, by mandating that he release copies of his full evaluation to individuals who should not be privy to it.  Plaintiff also alleges that he was relieved from duty by Acting Chief Kuhn in front of other personnel for no reason. Defendant has offered unrebutted evidence that Plaintiff was advised that he would be placed on leave pending completion of the fitness for duty evaluation.  (Doc. 32-1 at 21).

On November 18, 2010, the City received a copy of an affidavit that Plaintiff signed on behalf of Ron Evans.

On December 29, 2010, Plaintiff filed a second discrimination charge with the Equal Employment Opportunity Commission ("EEOC charge"), alleging race discrimination and retaliation.  Plaintiff's EEOC charge alleged discrimination on the dates of March 5, 2010 (the date he was relieved of his Lieutenant duties based on the Potter charges) and October 19, 2010 (when he was placed on leave for a fitness for duty evaluation).  Plaintiff asserts that his prior March complaint was based on his opposition to discrimination against Evans.  The March complaint directly refers to the Potter charges, which Plaintiff here contends were filed in retaliation for Plaintiff's opposition to discrimination against Evans.  However, neither Plaintiff's March EEO complaint nor his December EEOC charge refer to Evans,[6] or to any retaliatory conduct in connection with Evans.

Plaintiff's counsel and the City were unable to agree on release language and a distribution list for the psychological report that would be generated from Plaintiff's fitness for duty exam.  As a result of that disagreement, the examining psychologist, at the direction of the City, declined to proceed with the original January 2011 evaluation date.

On October 18, 2011, nearly one year after removing Plaintiff from his duties, the City advised Plaintiff that he had 3 days to sign a release for the exam or he would be subjected to immediate disciplinary action, including possible termination.  Doc. 43, Exh. 14, Doc. 30-1.  Plaintiff signed a modified release and reported for the exam on November 2, 2011.  As a result of the exam, Plaintiff was deemed fit for duty on or

---

[6]The December EEOC charge alleges that during the investigation of Plaintiff's March EEO complaint, "Lisa Berning…stated Kevin Campbell has the right to be a racist…"  However, the charge alleges only retaliation and discrimination against Plaintiff, without any reference to Evans.

about November 17, 2011, (Doc. 43 at Exh. 16), although he was not returned to full duty until February 2012. Much of Plaintiff's leave time between October 19, 2010 and February 2012 was unpaid.

Prior to returning to full duty, on January 24, 2012, Plaintiff filed this action. Soon after his return to duty in February 2012, Defendant informed Plaintiff that he would be administratively transferred from Engine 34 due to the ongoing strained relationship he had with Captain Campbell. Plaintiff asserts that it was Captain Potter who recommended the transfer, and that Captain Campbell approved it. Although Plaintiff opposed the involuntary administrative transfer, in April 2012 he was offered and selected the transfer location of Engine Company 51. The parties dispute whether the transfer resulted in lost pay, benefits, and/or responsibility.[7] Plaintiff amended his complaint on August 24, 2012. After amending his complaint, Plaintiff filed another EEOC charge alleging that his transfer was in retaliation for his protected activities. (Doc. 43, Attachment G).

## II. Analysis

### A. Summary Judgment Standard

In a motion for summary judgment, a court "must view the facts and any inferences that can be drawn from those facts ... in the light most favorable to the nonmoving party." *Keweenaw Bay Indian Comm. v. Rising,* 477 F.3d 881, 886 (6th Cir. 2007) (internal quotation marks omitted). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

[7]Although Plaintiff's base pay, benefits and job title did not change, he testified that he lost the ability to earn overtime pay, and that the transfer adversely affected his responsibilities in additional ways.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Id.* (quoting Fed.R.Civ.P. 56(c))(internal quotation marks omitted).  "Weighing of the evidence or making credibility determinations are prohibited at summary judgment-rather, all facts must be viewed in the light most favorable to the non-moving party." *Id.*  However, summary judgment will be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### B.  Defendant's Motion

Plaintiff's complaint presents separate but closely related claims under Title VII and Ohio's state law equivalent, O.R.C. §4112.02, more specifically: (1) that Defendant retaliated against Plaintiff and created a hostile work environment based on Plaintiff's opposition to alleged race discrimination against Evans; and (2) that Defendant discriminated against Plaintiff and retaliated against him for his protected activities in opposing discriminatory practices.  (Doc. 16, ¶¶31-32).  In addition, Plaintiff's Amended Complaint alleges that Defendant violated his equal protection and due process rights under the Fourteenth Amendment, in violation of 42 U.S.C. §1983.  Defendant seeks summary judgment on Plaintiff's §1983 claim and Title VII claims.

Plaintiff does not oppose Defendant's motion for summary judgment on his §1983 claim.  (Doc. 43 at 2, "Lt. Broach no longer pursues claims under those legal theories.").  Therefore, judgment on that claim will be granted to Defendant.  Plaintiff does oppose Defendant's motion for summary judgment concerning three discrete

employment actions: (1) the February 2010 charges filed by Captain Potter; (2) the referral of Plaintiff for a fitness for duty examination; and (3) Plaintiff's transfer from Engine 34 to Engine 51.

Because Plaintiff has no direct evidence of retaliation, the familiar *McDonnell Douglas* burden-shifting framework applies to all of Plaintiff's claims. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under that framework, a plaintiff may establish a retaliation claim by showing that: (1) he engaged in activity protected by Title VII; (2) the protected activity was known to Defendant; (3) Defendant subjected Plaintiff to an adverse employment action; and (4) a causal connection exists between the protected activity and the materially adverse action. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000).

Once a plaintiff has established a prima facie case under the *McDonnell Douglas* framework, the burden of production shifts to the employer to put forth a "legitimate, nondiscriminatory reason" for the adverse action taken. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 246, 253 (1981). If the employer meets that burden, then "the presumption of discrimination (or retaliation) created by the prima facie case falls away…and the plaintiff then needs to show that the defendant's 'legitimate nondiscriminatory reason' was a 'pretext for discrimination.'" *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 706-707 (6th Cir. 2006)(citing *DiCarlo v. Potter*, 358 F.3d 408, 414-15 (6th Cir. 2004)(additional citation omitted)). The Court will first address Defendant's arguments that Plaintiff cannot establish his prima facie case with respect to the referenced three employment actions, before turning to Defendant's alternative arguments that Plaintiff cannot overcome Defendant's articulated legitimate reasons for

the employment actions.

### C. Prima Facie Retaliation Case Regarding Three Employment Actions

### 1. The February 2010 Potter Charges

Defendant claims that Plaintiff cannot establish any of the four prima facie elements of his retaliation claim concerning the February 2010 Potter charges. Defendant specifically argues that it is entitled to summary judgment because: (a) Plaintiff was not engaged in protected activity concerning Evans prior to February 2010; (b) the City had no knowledge of Plaintiff's alleged protected activity; (c) the Potter charges did not constitute an adverse employment action; and (d) the Potter charges were not causally related to Plaintiff's alleged protected activity. As all four arguments are interrelated, they are discussed together.

Defendant first argues that Plaintiff cannot demonstrate that the Potter charges were in retaliation for Plaintiff's "protected activity," meaning Plaintiff's opposition to alleged discrimination against Evans. Title VII's "Participation Clause" prohibits retaliatory discrimination based upon an employee's opposition to discrimination. Similarly, O.R.C. §4112.02(I) prohibits not only direct discrimination, but also discrimination against any person who has "opposed any unlawful discriminatory practice" or who has "testified, assisted, or participated in any manner in any investigation, proceeding, or hearing" relating to a discrimination claim. However, Defendant cites case law holding that "overt" opposition or action is required in order to constitute protected activity under Title VII and O.R.C. §4112.02(I). *See Coch v. Gem Indus., Inc.*, 2005 WL 1414454 at ¶32 (6th Dist. Ohio Ct. App., June 17, 2005)(holding that in order to be considered protected conduct, "'a plaintiff must make an overt stand

against suspected illegal discriminatory action,'" quoting *Cominsky v. Automotive Industry Action Group*, 40 F.Supp.2d 877, 898 (E.D. Mich. 1999). The essence of *Cominsky* and related case law cited by Defendant is that it is not enough for a plaintiff to vaguely assert that an adverse employment action must have been the result of racial discrimination or retaliation. Instead, a plaintiff must offer evidence that the adverse action was actually in retaliation for specific protected conduct. *See Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304 (6th Cir. 1989)(a vague charge of discrimination in an internal memorandum is insufficient to constitute opposition to an unlawful employment practice).

Defendant next argues that based upon Campbell's deposition testimony and Potter's affidavit, this Court should conclude that Potter was unaware of Plaintiff's alleged opposition to discrimination against Evans at the time that Potter filed charges against Plaintiff. Third, Defendant contends that Plaintiff has failed to show that the Potter charges constitute an adverse employment action, because an investigation alone is not generally adverse, and the charges ultimately were resolved in Plaintiff's favor. Finally, Defendant argues that Plaintiff has failed to prove any causal connection because the charges were based (according to Potter) solely on his observations of Plaintiff's conduct at the February 2010 structure fire.

In response, Plaintiff claims that the Potter charges were filed in retaliation for Plaintiff's refusal to discipline Evans for minor infractions that Plaintiff believed would not trigger discipline for a white firefighter. Plaintiff alleges that Campbell was motivated by discriminatory animus against Evans, and that Campbell told Plaintiff that Evans had filed race discrimination charges against him. In terms of whether the City was aware of

Plaintiff's opposition to alleged discrimination against Evans, Plaintiff testified that Campbell threatened to "destroy" Plaintiff's career if Plaintiff did not cooperate in getting rid of Evans.  (Doc. 35, Broach depo. at 42, 245-247).   Plaintiff admittedly did not state any reason for refusing to discipline Evans to Captain Campbell, or to anyone else, prior to February 2010 when the Potter charges were filed.   Plaintiff testified that he discussed his concerns about Campbell at some point with Chief Kluesner, but that he was rebuffed.[8]  (*Id.*, Broach depo. at 13-15).   However, Plaintiff testified that he saw Captain Potter at the grocery store around the time that charges were filed, and that Potter told him then that Captain Campbell had told him (Potter) that Plaintiff was not doing his job with respect to Evans.  (*Id.*, Broach depo. at 121-124).

The issue of whether Plaintiff's refusal to discipline Evans constitutes protected activity is extremely close.  Cognizant of the fact that all inferences are to be drawn in Plaintiff's favor on summary judgment, the Court concludes that Plaintiff's testimony that Campbell threatened him for failing to discipline Evans, and that Potter also referred to Plaintiff's conduct concerning Evans in a conversation at the grocery store around the time of the February charges, is sufficient to create a genuine issue of material fact concerning whether Captain Potter was at least partially motivated to file charges against Plaintiff based on Plaintiff's prior, at least arguably protected support of Evans. Defendant's reference to inconsistencies in Plaintiff's own testimony about the alleged grocery store conversation, and to Potter's and Campbell's denials of that conversation, do not provide grounds for summary judgment, but may be explored at trial.

---

[8]Although the record is not entirely clear, review of Plaintiff's deposition testimony suggests that this conversation occurred shortly after Plaintiff began working at Engine 34, in 2006 or 2007.

Plaintiff also has put forth sufficient evidence concerning whether the Potter charges constitute an adverse action. Plaintiff was the only lieutenant whose responsibilities were removed while charges were pending, and he points to the length of the investigation, as well as to the alleged delay in notifying Plaintiff of the favorable resolution, to support both the causation element and to show that the Potter charges were adverse. Plaintiff took stress leave as a result of the charges, and he ultimately lost some pay due to the length of that leave.

The filing of unfounded charges resulting in the suspension of supervisory duties and a period of unpaid stress leave may be considered to be materially adverse, if a jury determines that the charges were baseless and illegitimate, and motivated by unlawful retaliatory animus. Although Defendant argues that the length of investigation could not have been retaliatory, Plaintiff's complaint can be construed as fairly alleging that the investigation of the February charges was unduly prolonged after March 18, 2010, when Plaintiff filed his first discrimination complaint. Despite Defendant's contention that the large number of witnesses supported a lengthy investigation, and that Defendant made attempts to more timely notify Plaintiff of the favorable resolution, factual issues preclude summary judgment.

### 2. The October 2010 Fitness for Duty Evaluation

Plaintiff clearly engaged in protected activity by filing his own discrimination charge in March, 2010. In September 2010, the City learned that Plaintiff would be a witness on behalf of Evans, an event that constitutes additional protected activity. Plaintiff contends that Defendant retaliated against him for his protected activity on October 19, 2010, when it referred him for a fitness for duty examination, and placed

him on leave pending that examination. Unlike Plaintiff's disputed "opposition" activities concerning Evans prior to February 2010, the City does not dispute that Plaintiff's March charge and subsequent participation as a witness for Evans both constituted protected activity, and that the City was aware of that activity. However, Defendant argues that Plaintiff cannot prove two critical elements concerning this retaliation claim: (1) that the referral for examination was "adverse," and (2) that a causal connection existed between the protected activity and the referral.

In response, Plaintiff first argues that the referral for examination was materially adverse, because it would dissuade a reasonable worker from filing or pursuing a charge of discrimination. *See McDonald v. Potter*, 2007 WL 2300332 at *50-51(E.D. Tenn., Aug. 7, 2007), *aff'd,* 285 Fed. Appx. 260 (6th Cir. 2008)(holding that allegation that fitness for duty exam was retaliatory could support a prima facie case); *see also Hodges v. City of Milford*, 2013 WL 210278 (S.D. Ohio, Jan. 18, 2013). On the facts presented, Plaintiff argues that the fitness for duty referral caused a material change to the terms and conditions of his employment, because the City simultaneously removed him from duty, and did not reinstate him until February 2012. During that 16 month period, Plaintiff exhausted his paid leave and was required to take significant unpaid leave. The Court concludes that this evidence is sufficient to overcome Defendant's argument that the referral was not "adverse."

Plaintiff also disputes Defendant's second argument – that Plaintiff cannot show a causal connection between his protected activities and the fitness for duty exam. Plaintiff asserts temporal proximity and other circumstances provide circumstantial evidence that the two were causally related. The Sixth Circuit has held that temporal

proximity alone may be insufficient to prove causation, unless the events were very close in time. *See Mickey v. Zeidler Tool & Die Co.*, 515 F.3d 516, 524-525 (6th Cir. 2008). Plaintiff filed his discrimination charge in March 2010, and the referral for the exam was not until October. However, Plaintiff points out that his March charge was not investigated until late September 2010, the same month in which the City learned that Plaintiff would be a witness for Evans. There is also no dispute that Berning referred Plaintiff for the fitness for duty exam as a direct result of her investigation of his EEO charge. Plaintiff's removal from duty and referral for the fitness for duty exam occurred just six days after Plaintiff's last meeting with Berning. Thus, Plaintiff has offered adequate evidence to show that an issue of material fact exists concerning whether the fitness for duty exam was causally related to his protected activity.

Defendant additionally argues it is entitled to summary judgment concerning the lengthy delay in scheduling the fitness for duty exam. Defendant contends that the delay was due solely to ongoing negotiations between Plaintiff's counsel and Defendant concerning release language. Plaintiff complains that it was a "calculated delay…in retaliation for his protected activity," (Doc. 43 at 30), adding that counsel had agreed that the January 2011 evaluation would proceed as scheduled and the parties would work out the release language later. However, when Plaintiff arrived for the appointment he was told that it was cancelled at the request of the City. This presents a question of fact. Furthermore, Defendant is not entitled to judgment concerning Plaintiff's complaint that he was not returned to work until three months *after* the consulting psychologist determined that Plaintiff was fit for duty. That basis for delay also must be resolved at trial.

16

### 3. Transfer from Engine 34 to Engine 51

The third main employment action alleged by Plaintiff in support of his retaliation claim is his transfer from Engine 34 to Engine 51 in April 2012. Defendant argues that it is entitled to summary judgment concerning the transfer for two reasons: (1) because Plaintiff failed to first exhaust his administrative remedies concerning this employment action; and (2) because Plaintiff cannot show that the transfer was "adverse."

### a. Administrative Exhaustion

First, Defendant asserts that Plaintiff's transfer constitutes a "separate, discrete act," which is not encompassed by Plaintiff's December 2010 EEOC charge. Defendant asserts that Plaintiff attempted to file a separate charge of discriminatory retaliation regarding the transfer, following the filing of his amended complaint in August 2012. Defendant contends that it is entitled to judgment based upon Plaintiff's failure to first exhaust his administrative remedies concerning his transfer. In response, Plaintiff has offered evidence of his Right to Sue letter. (*See* Doc. 42-6).

Defendant argues that the March 2013 Right to Sue letter is insufficient, because the transfer is distinct from the allegations included in the December 2010 EEOC charge. However, in light of Plaintiff's related claims including the fitness for duty referral and Defendant's alleged delay in reinstating Plaintiff following the completion of that exam, the Court finds it appropriate to liberally construe the transfer as arising out of Plaintiff's prior EEOC charge.

### b. Whether Plaintiff's Transfer is Adverse

Defendant additionally argues that Plaintiff's transfer was not adverse. A transfer generally is considered "adverse" only if it is accompanied by a change in salary, hours,

or benefits.  *See Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996).

Defendant notes that it is within the discretion of the Chief to transfer any employee, so

long as it is not for retaliation or discipline.  However, Plaintiff argues that the original

threat of administrative transfer had a negative impact on his duties and ability to do his

job well.  Plaintiff unsuccessfully grieved his administrative transfer, choosing the

"voluntarily" transfer only "under duress."  (Doc. 43 at 27).  Plaintiff alleges that due to

the transfer, he has less overtime available, is required to work more weekends, and

has had to deal with negative respect and morale issues from the firefighters that he

supervises.  The Court finds that this limited evidence of a reduction in pay, terms, and

conditions is sufficient to overcome Defendant's motion for summary judgment on the

issue of whether the transfer was "adverse."

While not delineated as a separate argument, Defendant briefly argues that there

is no causal relationship between Plaintiff's transfer and his protected activities.

However, Plaintiff points to the temporal proximity between the filing of this lawsuit on

January 24, 2012 and Defendant's decision to transfer Plaintiff less than three months

later, as well as the relevant facts that the transfer was recommended by Captain

Potter, and approved by Captain Campbell, both of whom Plaintiff named in his EEOC

charge.  The Court concludes that Plaintiff's evidence of causal connection is also

sufficient to overcome Defendant's motion for summary judgment.

### D.  Defendant's Business Judgment and Pretext

Under *McDonnell Douglas*, if an employer puts forth evidence of a legitimate,

nondiscriminatory reason for its action, the plaintiff must show that the reasons given

were not the true reasons, but were instead a pretext for discrimination.  *Barnhart v.*

*Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1395 (6th Cir. 1993). The "ultimate burden of proving…the intent to discriminate" remains with the plaintiff at all times. *Wright v. Murray Guard, Inc.,* 455 F.3d 702, 707 (6th Cir. 2006)(citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993)). "A plaintiff can refute the legitimate, nondiscriminatory reason that an employer offers to justify an adverse employment action 'by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.'" *Wexler v. White's Fine Furniture*, 317 F.3d 564, 576-577 (6th Cir. 2003)(additional citation omitted). Although Defendant argues that Plaintiff has presented no evidence of pretext, the Court again concludes that sufficient issues of material fact exist concerning two of the employment actions to preclude summary judgment. *See id.* (summary judgment inappropriate where inference concerning pretext could be drawn in Plaintiff's favor). On the other hand, Defendant is entitled to summary judgment based upon its unrebutted evidence of legitimate reasons for Plaintiff's transfer from Engine 34 to another station.

### 1. Pretext Regarding Potter Charges

Defendant first argues that Captain Potter's affidavit and testimony provide a legitimate business reason for his charges against Plaintiff. Captain Potter states that he filed the charges based *solely* on his belief that Plaintiff violated Fire Department policies and that safety issues were presented by Plaintiff's conduct. However, Plaintiff points to the delayed investigation of the charges, the conversation wherein Potter told Plaintiff that he had heard from Campbell that Plaintiff was not doing his job concerning

19

Evans, and the eventual conclusion that the charges were "unfounded," as evidence of pretext.

Defendant responds that Plaintiff's "delay" arguments ignore the facts that the investigation was hampered by Plaintiff's lengthy absence on stress leave, that the investigation required interviews of numerous witnesses, that Plaintiff did not contact the City about the investigation between June and September 2010, and that Plaintiff failed to contact his District Chief to check the status of his disciplinary case. Defendant again points out inconsistencies in Plaintiff's testimony regarding the grocery store conversation. Last, Defendant argues that the resolution of charges in Plaintiff's favor cannot constitute evidence of pretext, because otherwise every investigation would be deemed to be pretextual unless the employee were found guilty.

For much the same reasons discussed in connection with Plaintiff's prima facie case on this claim, the record contains disputed issues of material fact concerning the issue of pretext that preclude summary judgment.

### 2. Pretext Regarding Fitness for Duty Examination

Defendant next argues that the decision to refer Plaintiff for a fitness for duty examination was made by Berning alone, rather than anyone against whom Plaintiff had filed a discrimination charge, based on legitimate concerns presented during her investigation of Plaintiff's discrimination complaint. Defendant holds out Berning's status as an EEO investigating officer as presumptive evidence that she was acting in good faith.

However, Plaintiff points to evidence that the formal referral for the fitness for duty exam was made not by Berning alone, but with input from Lt. Lemmons and Acting

Chief Kuhn.  On October 15, 2010, Berning drafted a memo requesting the exam, and emailed it to Lemmons and Kuhn, as well as to Captain Campbell, for additional review. Doc. 43, Exh. 33, 32-1.  Kuhn's name is on the formal referral letter.  Berning also testified that she had no conversations or input regarding the decision to remove Plaintiff from duty pending the examination.  The Court concludes that Plaintiff has offered sufficient evidence, concerning whether the referral and subsequent removal from duty were pretextual, to overcome Defendant's motion for summary judgment.

### 3.  Pretext Regarding Transfer to Engine 51

Defendant is entitled to summary judgment on this issue because it has articulated a legitimate business reason to transfer Plaintiff – the strained relationship between Plaintiff and Captain Campbell.  In fact, Plaintiff admits that it was within the City's discretion to remove Captain Campbell due to their ongoing conflict at Engine 34. Notwithstanding that admission Plaintiff argues that the "strained relationship" was not the "true reason" for transferring him, because at the time of transfer, he and Campbell overlapped in shifts for just five minutes each day.  Plaintiff's speculative argument that the Defendant could have resolved the ongoing interpersonal conflict through creative scheduling does nothing to undermine the credibility or legitimacy of Defendant's stated business reason for the transfer.  It is not the province of this Court to judge whether one business decision is better than another, in the absence of any genuine issue of fact or evidence concerning pretext.

The only other evidence that Plaintiff offers is that the consulting psychologist who conducted the fitness for duty exam recommended counseling to help Plaintiff cope with his conflicts with Campbell, but the City did not mandate counseling.  However, the

psychologist's recommendation for counseling was separate from the determination of Plaintiff's fitness for duty.  Moreover, Plaintiff had previously undergone counseling, and elected not to return to PEAP or to seek any additional counseling on his own.  The fact that the City declined to order Plaintiff to attend mandatory counseling is not probative evidence of pretext.

### E.  Hostile Work Environment Claim

The anti-retaliation provision of Title VII is broader than the anti-discrimination provision.  *Vaughn v. Louisville Water Co.*, 302 Fed. Appx. 337, 348 (6th Cir. 2008)("A materially adverse action in the retaliation context is not limited to those actions that affect the terms and conditions of employment").  In Plaintiff's responsive memorandum, he asserts that Defendant has failed to move for summary judgment concerning his hostile work environment claim.  Defendant argues in reply that the same arguments presented regarding the discrete employment actions would entitle Defendant to judgment as a matter of law on any hostile work environment claim.  Considered in totality, and for the same reasons previously discussed, Plaintiff's evidence is sufficient to survive Defendant's motion.

### III.  Conclusion and Order

For the stated reasons, **IT IS ORDERED THAT** the Defendant's Motion for Summary Judgment (Doc. 23) be **GRANTED IN PART and DENIED IN PART.** Defendant is entitled to summary judgment as to the §1983 claims.  Defendant is also entitled to summary judgment for claims relating to Plaintiff's transfer, based upon Plaintiff's failure to offer any evidence that the Defendant's legitimate reasons for transfer were pretextual.  All remaining claims will be permitted to proceed to trial.

_s/ Stephanie K. Bowman_
Stephanie K. Bowman
United States Magistrate Judge